```
                      UNITED STATES DISTRICT COURT
                        DISTRICT OF CONNECTICUT
```

LEO CAMACHO CINTRON,         :
                             :
     Plaintiff,              :
                             :
     v.                      :    CASE NO.  3:16cv188(DFM)
                             :
NANCY A. BERRYHILL,[1]       :
ACTING COMMISSIONER OF       :
SOCIAL SECURITY,             :
                             :
     Defendant.              :

## RULING AND ORDER

The plaintiff, Lee Camacho Cintron, seeks judicial review pursuant to 42 U.S.C. § 405(g) of a final decision by the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits and supplemental security income. The plaintiff asks the court to reverse the Commissioner's decision or, alternatively, remand for a rehearing. (Doc. #12.) The Commissioner, in turn, seeks an order affirming the decision. (Doc. #14.) For the reasons set forth below, the plaintiff's motion is granted and the defendant's motion is denied.[2]

---

[1] At the time the plaintiff commenced this action, Carolyn W. Colvin was the Acting Commissioner of Social Security. On January 21, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security and is replaced as the defendant in this action.

[2] This is not a recommended ruling. The parties consented to the jurisdiction of a magistrate judge and on December 19, 2017, the case was transferred to the undersigned. (Doc. #21.)

I.   Administrative Proceedings

In December 2011, the plaintiff filed applications alleging that he has been disabled since December 1, 2008. (R.[3] at 89.) The plaintiff's applications were denied initially and upon reconsideration. He requested a hearing before an Administrative Law Judge ("ALJ"). On May 30, 2014, the plaintiff, represented by counsel, testified at the hearing. A vocational expert also testified. On June 27, 2014, the ALJ issued a decision finding that the plaintiff was not disabled. (R. at 40-55.) The ALJ's decision became final on December 21, 2015, when the Appeals Council declined further review. (R. at 1.) This action followed.

II.  Standard of Review

The court may reverse an ALJ's finding that a plaintiff is not disabled only if the ALJ applied the incorrect legal standards or if the decision is not supported by substantial evidence. Brault v. Soc. Sec. Admin., 683 F.3d 443, 447 (2d Cir. 2012). In determining whether the ALJ's findings "are supported by substantial evidence, 'the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983)). "Substantial

---

[3]The administrative record filed by the Commissioner shall be referred to as "R."

evidence is more than a mere scintilla. . . . It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brault, 683 F.3d at 447 (quotation marks and citations omitted).

III. Statutory Framework

The Commissioner of Social Security uses the following five-step procedure to evaluate disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience.... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (internal alterations and citation omitted).

IV. The ALJ's Decision

Following the five step evaluation process, the ALJ found that the plaintiff had not engaged in substantial gainful activity since his alleged onset date. (R. at 42.) At step two, the ALJ concluded that the plaintiff had severe impairments of diabetes

3

mellitus with neuropathy; high blood pressure; anxiety; depression; sleep apnea; mild restrictive airway disease; right carpal tunnel syndrome; lumbar stenosis at L5-S1; and obesity. (R. at 43.) At step three, the ALJ found that the plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of a listed impairment in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. (R. at 43.) The ALJ next determined that the plaintiff had

> the residual functional capacity ("RFC")[4] to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) in that the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently; and stand and walk four hours and sit for six hours during an eight-hour day. The claimant can never climb ladders, ramps or scaffolds; can occasionally climb stairs and rams, balance, stoop, kneel, crouch, and crawl. The claimant is limited to gross and fine manipulation bilaterally on a frequent basis and must avoid hazards and poorly ventilated areas. He is limited to understanding, remembering, and carrying out simple, routine, repetitive, non-complex tasks.

(R. at 46.) The ALJ concluded that the plaintiff was not capable of performing any past relevant work. (R. at 53.) At step five, after considering the plaintiff's age, education, work experience, and RFC as well as the testimony of the vocational expert, the ALJ determined that the plaintiff could work as an assembler or collator operator. (R. at 55.) Accordingly, the ALJ concluded

---

[4]Residual functional capacity ("RFC") is what a person is still capable of doing despite limitations resulting from physical and mental impairments. See 20 C.F.R. §§ 404.1545(a), 416.945(a)(1).

4

that the plaintiff was not disabled. (R. at 55.)

V. Discussion

The plaintiff argues that the ALJ erred in her assessment of the opinion of the plaintiff's treating physician, Dr. Ivelisse Rivera-Godreau, and failed to follow the treating physician rule.

"The SSA recognizes a rule of deference to the medical views of a physician who is engaged in the primary treatment of a claimant. Thus, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Greek v. Colvin, 802 F.3d 370, 375-76 (2d Cir. 2015). "[W]hen a treating physician's opinion is not given controlling weight, SSA regulations require the ALJ to consider several factors in determining how much weight the opinion should receive. See 20 C.F.R. § 404.1527(c)(2)(i), (2)(ii), (3)-(6)." Greek, 802 F.3d at 375. "[T]o override the opinion of the treating physician, we have held that the ALJ must explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." Greek, 802 F.3d at 375 (quotation marks and citation omitted). "After considering the above factors,

5

the ALJ must comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." Id. (quotation marks and citations omitted). "The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." Id. (quotation marks and citations omitted).

The plaintiff's primary care physician, Dr. Rivera-Godreau, monitored the plaintiff very closely. She saw him continuously, sometimes monthly, from 2009 until 2014. On January 21, 2014, she completed a "Medical Source Statement of Ability to Do Work-related Activities (Physical)" for the SSA. (R. at 748.) She opined that as a result of his health conditions, the plaintiff had certain limitations in his ability to perform physical work functions. According to Dr. Rivera-Godreau, the plaintiff could frequently lift and carry up to ten pounds; could stand and/or walk less than two hours; and could sit less than six hours. She indicated that the plaintiff's ability to push and/or pull was affected. In support of the limitations she ascribed to the plaintiff, Dr. Rivera-Godreau explained that the plaintiff had "limited range of motion of trunk, positive NCS [nerve conduction study], [and] "leg edema." (R. at 749.) With regard to postural limitations, Dr. Rivera-Godreau opined that the plaintiff could occasionally climb but never balance, kneel, crouch, crawl or stoop due to persistent leg and back pain. Dr. Rivera-Godreau further concluded that because of the plaintiff's carpal tunnel syndrome and diabetic

6

neuropathy, he could only "occasionally" perform the functions of reaching, handling (gross manipulation), fingering (fine manipulation) and feeling (skin receptors).

The ALJ did not adopt Dr. Rivera-Godreau's opinion. In her decision, the ALJ assigned little weight to Dr. Rivera-Godreau's opinion, stating that the "extremely limited exertional abilities" it reflected were "inconsistent" with "the substantial medical evidence from this provider, diagnostic testing, and the claimant's daily activities." (R. at 52.) The ALJ explained that

> [d]iagnostic testing and clinical examinations documented intact neurological functioning with only some diminished sensation in the lower extremities. The claimant retained full motor strength and intact deep tendon reflexes. This provider's treatment notes also document frequent recommendations to exercise and the claimant's report of exercise. Further, treatment notes on January 21, 2014 documented that the provider "partially" completed the form with the claimant; thus, these restrictions appear based in part on the claimant's reports of pain and functional limitations. However, I have not found the degree, intensity, and persistence of the claimant's allegations to be fully credible . . . .

(R. at 52.)

It is not clear that the ALJ considered the required factors in discounting Dr. Rivera-Godreau's opinion. There is no discussion or consideration of the "frequency of examination and the length, nature and extent of the treatment relationship" or "the evidence in support of the opinion." The scant discussion of Dr. Rivera-Godreau's opinion does not demonstrate that the ALJ engaged in the proper analysis. See, e.g., Madera v. Comm'r of

7

Soc. Sec., No. 15CIV3127(WHP)(JCF), 2016 WL 4081131, at *12 (S.D.N.Y. May 9, 2016)(the ALJ did not engage in proper analysis where, inter alia, "there is no review of [plaintiff's] treatment relationship with the treating physician]."); Berg v. Colvin, No. 3:14-CV-01042 (SALM), 2016 WL 53823, at *7-8 (D. Conn. Jan. 5, 2016) (remanding where the ALJ had determined that the treating physician's opinion was inconsistent and unsupported by other medical evidence, because the ALJ failed to explicitly consider the Greek factors in coming to that conclusion).

Moreover, to the extent that the ALJ discounted Dr. Rivera-Godreau's opinion on the grounds that it was inconsistent with the plaintiff's activities of daily living, the ALJ does not offer any illustration of such inconsistencies. Nor are they self evident from the record. The record reflects that the most that the plaintiff reported walking was 45 minutes in June 2010. (R. at 459.) His other reports indicate significantly less exertion. (R. at 769, 898, 1014.) At the hearing in May 2014, the plaintiff testified he could not walk more than 15 minutes because of pain and because he loses his breath. (R. at 71.) As to other activities, he testified that his sister takes him grocery shopping. He explained that he does not drive because "sometimes [his] right leg goes numb." (R. at 74.) His mother, with whom he resides, helps him do laundry. (R. at 75.) He spends his time watching tv, sitting on the front porch and watching people, and

8

walking in the backyard. (R. at 77.) He attends mental health therapy weekly for his depression and anxiety. (R. at 78.) On this record, it is unclear how these activities are inconsistent with the limitations found by Dr. Rivera-Godreau.

Finally, to the extent that the ALJ discounted Dr. Rivera-Godreau's opinion because it was inconsistent with her treatment notes, under the circumstances of this case, the admonition of the Second Circuit in Rosa v. Callahan is pertinent:

> [A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record. See Schaal, 134 F.3d at 505 ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] sua sponte."); see also Hartnett v. Apfel, 21 F. Supp.2d 217, 221 (E.D.N.Y.1998) ("[I]f an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly"). In fact, where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history "even when the claimant is represented by counsel . . . ." Perez, 77 F.3d at 47.

Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999). See also Cammy v. Colvin, No. 12-CV-5810 (KAM), 2015 WL 6029187, at *16 (E.D.N.Y. Oct. 15, 2015) (remanding because the ALJ failed to seek additional information from the treating physicians to clarify inconsistencies); Gabrielsen v. Colvin, No. 12-CV-5694 (KMK) (PED), 2015 WL 4597548, at *7 (S.D.N.Y. July 30, 2015) (finding that the ALJ had the obligation to re-contact the treating physician to seek clarifying information given the treating physician's unique

9

position to resolve certain inconsistencies); Rysztenyk v. Astrue, No. 12-CV-2431(SLT), 2014 WL 2986700, at *11 (E.D.N.Y. July 1, 2014) (remanding where the ALJ made no attempt to clarify the inconsistency between the treating physician's treatment notes and his source statement); Yu v. Astrue, 963 F. Supp. 2d 201, 215 (E.D.N.Y. 2013)(concluding that even if the treating physician's treatment notes were inconsistent with his opinion, "the ALJ should not have selectively relied on the former, insofar as they supported his conclusion and the latter did not. . . . Rather, the ALJ had a duty to develop the record . . . .").

For these reasons, the court remands this action with instructions to the ALJ to develop the record, determine the appropriate weight to accord to Dr. Rivera-Godreau's opinion, and, if controlling weight is not assigned, specifically articulate the reasons supporting the weight given the treater's opinion. See, e.g., Berg v. Colvin, No. 3:14CV1042(SALM), 2016 WL 53823, at *8 (D. Conn. Jan. 5, 2016) ("Because it is not clear from the ALJ's opinion that she considered all of the factors enumerated in the regulations, the ALJ failed to give 'good reasons' for according little weight, and remand is warranted to ensure that all of the enumerated factors were given appropriate consideration.").[5] In

---

[5] In light of the foregoing, I need not discuss plaintiff's other arguments. See Johnston v. Colvin, No. 3:13CV73(JCH), 2014 WL 1304715, at *34 (D. Conn. Mar. 31, 2014) (where case reversed and remanded for re-weighing of evidence in light of ALJ's improper application of treating physician rule, district court need not

10

rejecting this portion of the ALJ's decision, the court expresses no opinion as to whether the plaintiff is disabled.  Rather, the court finds only that the ALJ erred in weighing the opinion of the plaintiff's treating physician.

VI. <u>Conclusion</u>

For these reasons, the plaintiff's motion to reverse and/or remand the Commissioner's decision (doc. #12) is granted and the defendant's motion to affirm the decision of the Commissioner (doc. #14) is denied.

SO ORDERED at Hartford, Connecticut this 29th day of August, 2018.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge

---

reach merits of plaintiff's remaining arguments).